# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

|   |   |
|---|---|
| JAYKAL LED SOLUTIONS INC., | * |
| Plaintiff, | * |
| v. | Case No.: PWG-17-1380 |
| G-W MANAGEMENT SERVICES, LLC, | * |
| Defendant. | * |

## MEMORANDUM OPINION

In May 2016, G-W Management Services, LLC ("G-W Management" or "GWMS") received a proposal from a potential subcontractor, JayKal LED Solutions Inc. ("JayKal"), as it was preparing a bid for a lighting project ("Lighting Project") at the Walter Reed National Military Medical Center. G-W Management included the pricing information it received from JayKal in its final bid submission, was subsequently awarded the Lighting Project contract, but did not use JayKal as a subcontractor. JayKal viewed G-W Management's actions as fraudulent and a breach of contract, and filed this litigation. Compl., ECF No. 1. G-W Management has moved to dismiss the case. ECF No. 14.[1] G-W Management's Motion to Dismiss is granted in part, as JayKal has failed to state a claim for fraud, and is denied in part, as JayKal has stated a claim for breach of contract. G-W Management must file its Answer no later than November 7, 2017.

---

[1] The parties fully briefed the motion. ECF Nos. 14, 15, 17. A hearing is not necessary. *See* Loc. R. 105.6.

# BACKGROUND[2]

On May 10, 2016, a request for proposal was issued for a Lighting Project at the Walter Reed National Military Medical Center ("WRNMMC" or "Walter Reed"). Compl. ¶ 10. JayKal, a manufacturer, supplier, and installer of LED lighting products, initially sent its pricing to G-W Management, a bidder on the Walter Reed contract, on June 3, 2016. *Id.* ¶ 14. On June 8, 2016, JayKal sent its initial proposal to G-W Management for the Lighting Project. *Id.* ¶ 15. G-W Management was informed on June 9, 2016 that the Potomac Electric Power Company ("Pepco") would be accepting applications for incentives coinciding with the bid proposal. *Id.* ¶ 16. The Pepco incentive announcement provided an extension to the deadline to submit bid proposals, and during that extension, JayKal updated its turn-key proposal ("Proposal"), which then provided for $1,153,788 in LED lighting material. *Id.* ¶¶ 17–18; Proposal, ECF No. 14-1. G-W Management included JayKal's Proposal pricing in its June 27, 2016 bid response for the Lighting Project. Compl. ¶ 22. On July 12, 2016, G-W Management was informed it was awarded the Lighting Project contract. *Id.* ¶ 24.

On July 14, 2016, G-W Management Project Executive Michael Heaton met with JayKal's President, Sanjay Kapuria, at G-W Management's offices. *Id.* ¶ 27. During the meeting, the parties agreed to additional terms beyond the Proposal, which included:

   a. JayKal would complete the paperwork, certification, pre and post-evaluation, and inspection needed to secure a Pepco rebate that would be split evenly between GWMS and JayKal;

   b. JayKal would complete all formalities and paperwork required to receive federal tax credits, which would be split evenly between GWMS and JayKal;

   c. The terms of JayKal's agreement with GWMS were limited to JayKal supplying the LED lighting material for the WRNMMC Project; and

---

[2] For purposes of considering Defendants' Motion, this Court accepts the facts that Plaintiff alleged in its Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

> d. GWMS would send the work order for the Agreement to JayKal after the bond released in 10 days.

*Id.* Following the meeting, on July 15, 2016, JayKal sent G-W Management an email confirming the "prior day agreement about the Pepco rebate and federal tax credit terms." *Id.* ¶ 28. According to JayKal, its June 24, 2016 updated Proposal and the parties' discussion of terms during their July 14, 2016 meeting resulted in a binding and enforceable contract. *Id.* ¶ 29. In its view, the agreement that was reached was for JayKal to receive $1,153,788 for its LED lighting material for the Lighting Project and for the Pepco rebates and federal tax credits to be split equally between JayKal and G-W Management. *Id.*

On or about August 3, 2016, G-W Management informed JayKal that it was going to work with a different vendor instead of JayKal. *Id.* ¶ 33. As a result, JayKal did not receive $1,153,788 for supplying the LED lighting materials or its portion of the Pepco rebates or federal tax credits. *Id.* ¶ 34. JayKal alleges that it had relied on G-W Management's false representations "that JayKal would serve as GWMS's Lighting Project subcontractor and enjoy the agreed-upon benefits," which "entic[ed] JayKal to provide its specifications, pricing, experience at WRNMMC, and excellent reputation in the industry to win the Lighting Project bid." *Id.* ¶¶ 37–38.

In an email dated August 4, 2016, G-W Management stated that it decided not work with JayKal because of concerns about JayKal's ability to complete its work within the time required by Walter Reed and concerns over its products complying with the Buy American Act. *Id.* ¶ 40. Kapuria responded that JayKal's products were compliant with the Buy American Act and that JayKal could begin delivery within two weeks, although it advised against doing so ahead of Pepco approval. *Id.* ¶ 41. "Kapuria also told Heaton that GWMS used JayKal's proprietary pricing and specification data under the false pretense that if GWMS won the Lighting Project

3

bid it would use JayKal as the Project's LED subcontractor and the parties would split the Pepco rebates and federal tax credits." *Id.* ¶ 42. Heaton responded to Kapuria's email and appeared to acknowledge that a contract existed. *Id.* ¶ 43. He stated that G-W Management used JayKal's pricing in its bid and that G-W Management "would hold JayKal responsible for breaching the Contract by purportedly forcing GWMS to retain a new higher-priced subcontractor for the Lighting Project instead of JayKal." *Id.*

On May 18, 2017, JayKal filed suit against G-W Management alleging breach of contract and fraud. *Id.* ¶¶ 58–68. JayKal seeks minimum damages of $1,100,000 for breach of contract and $75,000 in compensatory damages and $500,000 in punitive damages for fraud. *Id.*

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Plaintiff's fraud allegations must meet the "heightened pleading standard under Rule 9(b)." *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013).

> Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Such allegations [of fraud] typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" In cases involving concealment or omissions of material facts, however, meeting Rule 9(b)'s particularity requirement will likely take a different form. The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim; to protect the defendant against frivolous suits; to eliminate fraud actions where all of the facts are learned only after discovery; and to safeguard the defendant's reputation.

*Id.* (citations omitted); *see Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). However, the Court also may consider "any 'document that the defendant attaches to its motion to dismiss if the document was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.'" *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 648 (D. Md. 2015) (quoting *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (citation and quotation marks omitted)). As noted, Defendant attached the Proposal to its Motion. The Proposal "was integral

5

to and explicitly relied on in the complaint," and Plaintiff does not challenge its authenticity, such that I may consider it without converting the motion to a motion for summary judgment. *See id.*

## DISCUSSION

### Breach of Contract (Count I)

"Under Maryland law,[3] '[t]he formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.'" *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013) (quoting *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir.2004)). "It is axiomatic that for a contract to be valid, both parties must mutually assent to be bound by it." *NeighborCare Pharmacy Servs., Inc. v. Sunrise Healthcare Ctr., Inc.*, No. JFM-05-1549, 2005 WL 3481346, at *2 (D. Md. Dec. 20, 2005). However, the parties' signatures are not necessary; "[t]he manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act." *See id.* (quoting 17A Am. Jur. 2d Contracts § 34 (2004)).

A breach of contract is "a failure without legal excuse to perform any promise which forms the whole or part of a contract . . . ." *In re Ashby Enters., Ltd.*, 250 B.R. 69, 72 (Bankr. D. Md. 2000) (quoting *Conn. Pizza, Inc. v. Bell Atl.-Wash., D.C., Inc.*, 193 B.R. 217, 225 (Bankr. D. Md. 1996) (quoting *Weiss v. Sheet Metal Fabricators, Inc.*, 110 A.2d 671, 675 (Md. 1955)) (quotation marks omitted)). Under Maryland law, "[t]he elements of a claim for breach of contract include 'contractual obligation, breach, and damages.'" *Tucker v.*

---

[3] Both parties cite Maryland law. *See* Def.'s Mot. 5; Pl.'s Opp'n 4–5; *see also Nationwide Mut. Ins. Co. v. Welker*, 792 F. Supp. 433, 437 (D. Md. 1992) (applying Maryland law for a contract dispute that arose in Maryland) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Accordingly, so shall I.

6

*Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) (quoting *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011)).

JayKal claims that its Proposal was an "already-existing agreement." Compl. ¶ 27. G-W Management insists that JayKal has not stated a claim for breach of contract against it because a submission of a bid proposal does not constitute formation of a contract. Def.'s Mot. 6.[4] While it is true that a bid proposal alone does not form a contract, *Int'l Waste Indus. Corp. v. Cape Env't Mgmt, Inc.*, 988 F. Supp. 2d 542, 551 (D. Md. 2013), JayKal also contends that the Proposal is merely part of the contract it alleges.

JayKal pleads that it made an offer in the form of the Proposal and that G-W Management accepted the offer in the July 14, 2016 meeting. *See* Compl. ¶ 27. JayKal alleges that the contract includes the terms of the Proposal, which were supplemented by additional terms reached during the meeting, including, significantly, their agreement to share the Pepco rebates and federal tax credits. *Id*. These allegations sufficiently allege the formation of a contract. *See Nat. Prod. Sols., LLC v. Vitaquest Int'l, LLC,* No. CCB-13-436, 2014 WL 6383482 at *4 (D. Md. Nov. 13, 2014); *NeighborCare Pharmacy*, 2005 WL 3481346, at *2; *Tecart Indus., Inc. v. Nat'l Graphics*, *Inc.*, 198 F. Supp. 2d 719, 724 (D. Md. 2002) ("It is essential that the minds of the parties be in agreement on material terms in order for a contract to be established."). A plaintiff need not allege exactly how two parties reached an agreement; the plaintiff only needs to allege the terms of the agreement and the defendant's assent to those terms. *Tucker,* 83 F. Supp. 3d at 655 (quoting *Kumar*, 17 A.3d at 749); *see Fadis Concrete, Inc. v. Brawner Builders, Inc.*, No. ELH-15-3975, 2017 WL 4098739, at *5 (D. Md. Sept. 15, 2017) ("Whether oral or written, a contract must express with certainty the nature and extent of the

---

[4] Despite Local Rule 105.1 requiring parties to submit a motion and memorandum separately, Defendant has included its argument with its motion in ECF No. 14.

parties' obligations and the essential terms of the agreement.") (citing *Cty. Comm'rs for Carroll Cty. v. Forty W. Builders, Inc.*, 941 A.2d 1181, 1209–10 (Md. Ct. Spec. App. 2008).

Moreover, a contract also can be found to exist if there is an admission of its existence by the party against whom enforcement is sought. Md. Code Ann., Com. Law § 2-201(3)(b) (stating that a contract is still valid if it does not follow the statute of frauds "[i]f the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted."). JayKal pleads that on August 29, 2016, "Heaton sent Kapuria a response" that included that G-W Management "would hold JayKal responsible for *breaching the Contract* by purportedly forcing GWMS to retain a new higher-priced subcontractor for the Lighting Project instead of JayKal." Compl. ¶ 43 (emphasis added). If Heaton alleged a contract violation, then a contract would have had to exist for there to be grounds to hold JayKal responsible for a breach.

It is true that under Maryland's statute of frauds, a contract for the sale of goods for the price of $500 or more is not enforceable unless there is a sufficient writing that is signed by the party against whom enforcement is sought. *MEMC Elec. Materials, Inc. v. BP Solar Int'l, Inc.*, 9 A.3d 508, 519–20 (Md. Ct. Spec. App. 2010) (citing Md. Code Ann., Com. Law § 2-201). However,

> [t]he rule also provides an exception for merchants, which states that a writing in confirmation of the contract and sufficient against the sender that is received by a party who has reason to know of its contents satisfies the requirements of subsection (1) against the receiving party unless written notice of objection is given within ten days of receipt.

*Id.* at 519. In *BP Solar*, an email was found to be sufficient to confirm the terms of an agreement and bind the parties. *Id.* Here, JayKal sent G-W Management an email on July 15, 2016

8

confirming the parties' agreement the previous day pertaining to the Pepco rebate and federal tax credit terms. Compl. ¶ 28. Thus, although the alleged contract was for a sale of goods, the confirmation email would bring it within the exception in § 2-201, barring introduction of a timely written notice of objection.[5] Therefore, JayKal's complaint sufficiently alleges the formation of a contract.

In alleging there was a breach, JayKal pleaded that G-W Management did not use JayKal to work on the Lighting Project, but used a different company. Compl. ¶¶ 40, 43–44. By using a different company and not completing its contractual obligations, G-W Management's actions would constitute a breach of the contract. *See Nat. Prod. Sols., LLC*, 2014 WL 6383482 at *4 (citing Restatement (Second) of Contracts § 235 cmt. b (1981) ("When performance is due, . . . anything short of full performance is a breach, even if the party who does not fully perform was not at fault and even if the defect in his performance was not substantial.").

Therefore, Plaintiff has sufficiently stated a claim for breach of contract, and G-W Management's motion to dismiss Count I IS DENIED. *See* Fed. R. Civ. P. 12(b)(6).

**Fraud (Count II)**

JayKal claims that G-W Management is liable for fraud. Compl. ¶¶ 36–39, 62–68. To state a claim for fraud under Maryland law, Plaintiff

> must allege five elements with particularity: (1) the defendant made a false statement of fact; (2) the defendant knew the statement was false or acted with reckless disregard for the truth of the statement; (3) the defendant made the statement for the purpose of defrauding the plaintiff; (4) the plaintiff reasonably relied on the false statement, and (5) the plaintiff was damaged as a result.

---

[5] Of course, to rely on evidence of a timely objection to avoid liability on this claim, G-W Management would have to have a good faith basis for arguing that it had not waived the affirmative defense of the statute of frauds. *See Barry v. EMC Mortg. Corp.*, No. DKC-10-3120, 2012 WL 3595153 at *4 (D. Md. Aug. 17, 2012).

9

*Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013) (quoting *Thompson v. Countrywide Home Loans Servicing, L.P.*, No. L–09–2549, 2010 WL 1741398, at *3 (D. Md. Apr. 27, 2010) (citing *Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534 (Md. 1982))). Also, as noted, Plaintiff must meet the "heightened pleading standard under Rule 9(b)," by "'stat[ing] with particularity the circumstances constituting the fraud.'" *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013) (quoting *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 313–14 (D. Md. 2000)); *see Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013). However, Rule 9(b) permits "intent, knowledge, and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b).

Even when liberally construing the complaint, JayKal has failed to state a claim for fraud under Maryland law. JayKal claims that G-W Management acted with "actual malice and either knowing[] or with reckless indifference" when negotiating the terms of the contract for which it did not intend to fulfill. Compl. ¶¶ 63–64. Specifically, it alleges that Michael Heaton made false statements at a meeting with Sanjay Kapuria on July 14, 2016 by "falsely represent[ing] that it intended to . . . [u]tilize JayKal as a subcontracted provider of the LED lighting material for the Lighting Project," "[p]ay JayKal the agreed upon $1,153,788 for the LED lighting material," and split the Pepco rebates and any federal tax credits equally with JayKal. *Id.* ¶ 63; *see also id.* ¶¶ 27, 42, 64.

However, JayKal's pleading of fraud ends there. JayKal only alleges that it provided "specifications, pricing, experience at WRNMMC, and excellent reputation" because of Heaton's false statements. *Id.* ¶ 64. JayKal pleads that it would have been paid for the LED lighting material and received a portion of the Pepco rebates and federal tax credits had the

statements been true, *Id.* ¶¶ 27, 66, but fails to allege how it was harmed by providing pricing and specifications in reliance on the false statements. Indeed, according to the Complaint, JayKal provided the Proposal with its pricing information and specifications *before* the meeting at which Heaton allegedly made these false statements; it therefore could not have relied on statements that were not yet made. Further, insofar as JayKal claims that it entered into a contract with G-W Management in reliance on Heaton's statements, JayKal has not pleaded that it took any actions after entering into the alleged contract. And, in any event, no action by JayKal was needed for the contract to form between it and G-W Management after JayKal submitted its bid; all G-W Management had to do was accept it. Therefore, JayKal's Complaint lacks a causal connection between the alleged false statements and any reasonable reliance or injury that was suffered.

Thus, Plaintiff has not stated a claim for fraud and Count II IS DISMISSED. *See* Fed. R. Civ. P. 9(b); *Marchese*, 2013 WL 136427, at *9.

## CONCLUSION

In sum, for the reasons stated above, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. As noted, Plaintiff has failed to state a claim for fraud. Accordingly, Count II is DISMISSED. Plaintiff has stated a claim for breach of contract. Accordingly, Count I remains.

Defendants shall file an Answer no later than November 7, 2017, at which time the Court will enter a Scheduling Order and schedule a Rule 16 conference call with the parties to discuss further pretrial proceedings.

Dated: <u>October 20, 2017</u>　　　　　　　　　　　　　　　　　　　<u>　　　/S/　　　　　</u>
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Paul W. Grimm
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

jml